In the Circuit Court of
the Fifth Judicial Circuit
In and for Hernando County
Florida

Michael P. Halle                 Case #021144CF
      Vs.
State of Florida.

## Motion to Dismiss

I, Michael P. Halle, hereby move this most honorable court, To enter an order dismissing the above styled case(s) with prejudice. Pursuant to the Interstate Agreement on Detainers (Pub. L. 91-538 1-9, Dec 9, 1970, 84 Stat, 1397-1403) Wherefore my rights as secured by the United States Constitution, Amendment 6, Speedy Trial rights were Violated. Please See, Interstate Agreement on Detainers, Article III paragraph A., Article III paragraph d., Article V Paragraph c, (Attatched).

# Statement of the Facts

1.) On June 14, 2004 I Michael P. Halle, notified Hernando County, Florida, that I was requesting final disposition on any and all untried indictments, informations or complaints, in which a detainer has been lodged against me. This notification was sent U.S. certified mail, return receipt requested. Received and filed June 24, 2004. At which time it was sent back requesting more information.

2.) On June 22, 2004 The Hampden County Sheriffs Office, filed the proper forms for Interstate Agreement on Detainers. Pursuant to Michael P. Halle requesting final disposition. At which time there was two detainer holds in the State of Florida. Both in the Fifth Judicial Circuit, Hernando and Marion Counties. State Attorney for this Circuit is Bradley E. King.

3.) Offer of Temporary Custody was accepted by Bradley E. King State Attorney.

4.) In response to Hernando County requesting more information. Petitioner, Michael P. Halle, sent another notice for final disposition. This was sent to the appropriate court of Hernando County Florida, Also a copy was sent to the Assistant State wide Prosecutor for the State of Florida. Included in this document, was the case No.: 021144, Certificate of inmate status, and a copy of the charges, in which the detainer has been lodged. These documents were dated July 14, 2004 and sent U.S. certified mail return receipt requested Received by both parties on July 22, 2004

5.) The State of Florida, transported Michael P. Halle, from Hampden County Sheriffs Office, Ludlow, Ma. to Marion County Florida, Ocala, Fla. Petitioner was picked up August 19, 2004 and arrived August 23, 2004.

6) Hernando County Florida, Notified Marion County Jail of their hold on Michael P. Halle, on August 24, 2004.

7) Michael P. Halle was present with the Assistant State wide Prosecutor, Thomas D. Smith. In the Honorable Judge Victor J. Musleh's Chambers, For a Status Check on Hernando County Case; 021144 CF. This Conference took place on October 5, 2004, at 10:00 AM.

8.) On October 11, 2004, The Assistant State wide Prosecutor, Thomas D. Smith, Filed a motion for another Status Check, and notice to appear, October 21, 2004. The State of Florida failed to transport, said petitioner Michael P. Halle, to Hernando County Court for theese proceedings.

9.) On November 15, 2004, I Michael P. Halle pled out to 3 years Probation, In Marion County Florida, in front of Judge Victor J. Musleh. On all Marion County charges.

10) The petitioner Michael P. Halle, was returned to Marion County Jail, to await being transported to Hernando County, for final disposition of all Untried indictments, informations or complaints, through out the State of Florida. Pursuant to the Interstate Agreement on Detainers.

11) On December 7, 2004, The State of Florida, transported said Petitioner Michael P. Halle, To Ludlow Massachusetts Hampden County Jail & Corectional Center, The original place of incarceration.

12) In January 2005, I Michael P. Halle, was made aware, that I was a wanted person in Hernando County Florida, Case No. 021144 CF.

13.) On January 29, 2005 I, Michael P. Halle sent a petition for Writ of Habeus Corpus, to Hernando County Florida. This was received and filed January 31, 2005 And set for hearing, March 17, 2005. Which was denied due to no Jurisdiction Petitioner in Custody out of state.

14.) On March 18, 2005, I Michael P. Halle completed my commitment of 18 mos. to the commonwealth of Massachusetts.

15.) On March 21, 2005 I Michael P. Haile was ordered held for Hernando County Florida, Case No.: 021144 CF. At which time the Honorable Judge Polar, notified the state of Florida that I would not waive extradition and that they would have to obtain a Governor's Warrant. (Palmer District Court Docket #05-4306 47.)

16.) On April 21, 2005 I Michael P. Halle was served with a Governors Warrant, By the Massachusetts State Police.

17.) The Interstate Agreement on Detainers (Pub.L. 91-538 1-9 Dec. 9, 1970, 84 Stat. 1397-1403) Article III Paragraph d. Provides that, If trial is not had on any indictment, information, or complaint, contemplated hereby prior to the return of the prisoner to the original place

17.) continued,) of imprisonment such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18.) Article V paragraph c. Provides that, If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III (180 days) or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

All Pertinent and Supporting Documents Included.

Wherefore I Michael P. Halle respectfully
request relief sought herein.

Respectfully
Submitted
Michael P. Halle Pro Se
*Michael P. Halle*

# HAMPDEN COUNTY SHERIFF'S DEPARTMENT
## AND CORRECTIONAL CENTER

### INMATE REQUEST

To: *Barry Conway*

From: *Michael P Halle*          Person # *105-758*

Inmate Name

Date *3/6/05*    POD *C-5*    Cell *21*

Request *Would you please find out the case # for the Warrant (Hernando County) Fla.*

Inmates Signature: *Michael P Halle*

Received by: *Cpl. Breault*

STAFF RESPONSE:

Approved ☐    Denied ☐    (state reason)

*2002-1144CF*
*Appears 2/2/04 ??*

Employee Name/Title _____    Date *3/8/05*

WHITE - Unit File          YELLOW - Inmate          PINK - Kept by Inmate

HCHOC-0021 (3-Part) (9-4-92) (7-96) (167)



June 14, 2004

Michael P. Halle Pro Sé defendant
   V.
State of Florida  , Hernando County

   I Michael P. Halle, hereby notify the appropriate Court of Hernando County Florida, of my request, for final disposition of any untried indictments, information or Complaint, on the basis of which a detainer has been lodged against me. Pursuant to the "Interstate Agreement on Detainers Act" (Pub. L. 91-538 Dec. 9, 1970, 84 Stat. 1397

   Included is an official, authorized certificate, Stating, The term of my commitment to the Commonwealth of Massachuset. The time I've already served, The time remaining to be served, the amount of good time earned, and the time of my parole eligibility.

                    Please be governed
                         accordingly,
                    Respectfully Submitted
                    Michael P. Halle

Mr. Halle we need more information of what

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**1. Article Addressed to:**

HERNANDO COUNTY
    CLERK OF COURT
20 N. MAIN STREET
    RM 130
BROOKSVILLE FL 34601

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ▭▭▭▭▭▭▭▭▭  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
   ▭▭▭▭▭▭▭                        6/24

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

**3. Service Type**
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

**4. Restricted Delivery? (Extra Fee)**    ☐ Yes

**2. Article**
(Transfe

PS Form

85-02-M-1540

*8-23-04*

**Form 2**

Five copies, if only one jurisdiction within the state involved has an indictment, information or complaint pending. Additional copies will be necessary for prosecuting officials and clerks of court if detainers have been lodged by other jurisdictions within the state involved. One copy should be retained by the prisoner. One signed copy should be retained by the warden. Signed copies must be sent to the Agreement Administrator of the state which has the prisoner incarcerated, the prosecuting official of the jurisdiction which placed the detainer, and the clerk of the court which has jurisdiction over the matter. The copies for the prosecuting officials and the court must be transmitted by certified or registered mail, return receipt requested.

Agreement on Detainers: Form 2

# INMATE'S NOTICE OF PLACE OR IMPRISONMENT AND REQUEST FOR DISPOSITION OF INDICTMENTS, INFORMATIONS OR COMPLAINTS

TO:    **BRADLEY E. KING STATE'S ATTORNEY**    , Prosecuting Officer,    **MARION COUNTY**
                                                                                (jurisdiction)

            **SUPERIOR COURT**            , Court        **MARION COUNTY**
                                                                    (jurisdiction)

And to all other prosecuting officers and courts of jurisdictions listed below from which indictments, informations or complaints are pending.

    You are hereby notified that the undersigned is now imprisoned in

        **HAMPDEN COUNTY SHERIFF'S**        at        **629 RANDALL ROAD LUDLOW MA 01056**
                **DEPARTMENT**
                (institution)                                        (town and state)

and I hereby request that a final disposition be made of the following indictments, informations or complaints now pending against me:**UTTER FORGED INSTRUMENT AND GRAND THEFT**

Failure to take action in accordance with the Agreement on Detainers, to which your state is committed by law, will result in the invalidation of the indictments, informations or complaints.

    I hereby agree that this request will operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against me from your state. I also agree that this request shall be deemed to be my waiver of extradition with respect to any charge or proceeding contemplated hereby or included herein, and waiver of extradition to your state to serve any sentence there imposed upon me, after completion of my term of imprisonment in this state. I also agree that this request shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purposes of the Agreement on Detainers and a further consent voluntarily to be returned to the institution in which I now am confined.

    If jurisdiction over this matter is properly in another agency, court or officer, please designate the proper agency, court or officer and return this form to the sender.

    The required Certificate of Inmate Status and Offer of Temporary Custody are attached.

DATED:    **JUNE 22, 2004**            **MICHAEL HALLE 105758**
                                                            (inmate's name and number)

    The inmate must indicate below whether he has counsel or wishes the court to appoint counsel for purposes of any proceedings preliminary to trial which may take place before his delivery to the jurisdiction in which the indictment, information or complaint is pending. Failure to list the name and address of counsel will be construed to indicate the inmate's consent to the appointment of counsel by the appropriate court in the receiving state.

A. My counsel is    _____
                                        (name of counsel)

    whose address is    _____
                                        (street, city and state)

B: I request the court to appoint counsel.    *Michael P. Halle*
                                                            (inmate's signature)

Form 3

In the case of an inmate's request for disposition under Article III, copies of this Form should be attached to all copies of Form 2 in the case of a request initiated by a prosecutor under Article IV, copy of this Form should be sent to the prosecutor upon receipt by the warden of Form 6. Copies also should be sent to all other prosecutors in the same state who have lodged detainers against the inmate. A copy may be given to the inmate.

Agreement on Detainers:  Form 3

## CERTIFICATE OF INMATE STATUS

| RE: | MICHAEL HALLE | 105758 | HAMPDEN COUNTY SHERIFF'S DEPARTMENT | 629 RANDALL ROAD LUDLOW MA 01056 |
|---|---|---|---|---|
| | (inmate) | (number) | (Institution) | (location) |

The [ custodial authority ] hereby certifies:

1. The term of commitment under which the prisoner above named is being held:540 DAYS

2. The time already served:234 DAYS

3. Time remaining to be served on the sentence:306 DAYS

4. The possible good time discharge date:APRIL 17, 2005

5. The date of parole eligibility of the prisoner:OCT. 21, 2004

6. The decisions of the Board of Parole relating to the prisoner:  (if additional space is needed, use reverse side)HAS NO SEEN PAROLE AS OF YET

7. Maximum expiration date under present sentence or sentences:APRIL 17, 2005

8. Detainers Currently on file against this inmate from your state are as follows:

01-02641 UTTER FORGED INST. AND GRAND THEFT
01-2366 UTTER FORGED INST. AND GRAND THEFT
01-01948 UTTER FORGED INST. AND GRAND THEFT
01-01780 UTTER FORGED INST. AND GRAND THEFT
02-04410 UTTER FORGED INST. AND GRAND THEFT
02-02163 UTTER FORGED INST. AND GRAND THEFT

DATED:    JUNE 22, 2004

SHERIFF MICHAEL J. ASHE JR.
Custodial Authority

BY:    VELIKIA V. MURRAY INTAKE

In the case of an inmate's request for disposition under Article III, copies of this Form should be attached to all copies of Form 2. In case of a request initiated by a prosecutor this Form should be completed after the Governor has indicated his approval of the request for temporary custody or after the expiration of the 30 day period. Copies of this Form should be sent to all officials who previously received copies of Form 3. One copy also should be given to the prisoner and one copy should be retained by the warden. Copies mailed to the prosecutor should be sent by certified or registered mail, return receipt requested.

Agreement on Detainers: Form 4

## ORDER TO DELIVER TEMPORARY CUSTODY

Date _____ June 22, 2004 _____

TO:   **BRADLEY E. KING STATE'S ATTORNEY** _____   Prosecuting Officer   **SUPERIOR COURT**
<span style="padding-left:3em">(insert name and title if known)</span>

**MARON COUNTY**
<span style="padding-left:3em">(jurisdiction)</span>

And to all other prosecuting officers of jurisdictions listed below from which indictments, informations or complaints are pending.

RE: _____ **MICHAEL HALLE** _____   Number _____ **105758** _____
<span style="padding-left:3em">(inmate)</span>

Dear Sir:

Pursuant to the provisions of Article V of the Agreement on Detainers between this state and your state, the undersigned hereby offers to deliver temporary custody of the above-named prisoner to the appropriate authority in your state in order that speedy and efficient prosecution may be had of the indictment, information or complaint which is [ described in the attached inmate's request ] [ described in your request for custody of . _____ ]
<span style="padding-left:3em">(date)</span>

[ The required Certificate of Inmate Status is enclosed. ] [ The required Certificate of Inmate Status was sent to you with our letter of _____ ]
<span style="padding-left:6em">(date)</span>

If proceedings under Article IV(d) of the Agreement are indicated, an explanation is attached.

Indictments, informations or complaints charging the following offenses also are pending against the inmate in your state and you are hereby authorized to transfer the inmate to custody of appropriate authorities in these jurisdictions for purposes of disposing of these indictments, informations or complaints.

| Offense | County or Other Jurisdiction |
|---|---|
|  |  |
|  |  |
|  |  |

If you do not intend to bring the inmate to trial, will you please inform us as soon as possible? Kindly acknowledge.

**SHERIFF MICHAEL J. ASHE JR.**
<span style="padding-left:6em">(name and title of custodial authority)</span>
BY:   **VELIKIA V. MURRAY INTAKE**

**629 RANDALL ROAD LUDLOW MA  01056**
<span style="padding-left:6em">(situation and address)</span>

July 14, 2004
Case # 020011 44 CFM A

Michael P. Halle   Pro Se defendant
    Vs.
State of Florida, Hernando County

In The Circuit Court of The Fifth
Judicial Circuit In and For Hernando
County Florida.

I Michael P. Halle, here by notify
the appropriate court of Hernando County
Florida, of my request, for final disposition
of any untried indictments, informations of
Complaints, on the basis of which a detainer
has been lodged against me. Pursuant to
the "Interstate Agreement on Detainers Act."
(Pub. L. 91-538 Dec. 9, 1970, 84 Stat 1397.

Included is an official, authorized
certificate, Stating, The term of my commitment
to the Commonwealth of Massachusetts, The time
already served, Time remaining, amount of good time
earned, and Parole eligibility date. Also included
is a copy of the charges in which the detainer
has been lodged against me. Please be governed
accordingly, Respectfully Submiti
Michael P. Halle

# HAMPDEN COUNTY CORRECTIONAL CENTER

## LEGAL RESOURCES DEPARTMENT

**TO:**       **MICHAEL P. HALLE (C2-003)**

**FROM:**   **WILLIAM M. FITZGERALD**

**DATE:**    **JUNE 14, 2004**

**RE:**        **REQUEST FORM RECEIVED 6-14-04**

Dear Mr. Halle:

Your incarceration at the Hampden County Correctional Center (HCCC) began on October 10, 2003. You are scheduled to be released from the HCCC on April 17, 2005.

You have thus far been credited with 141 days served. Ninety (90) of those days relate to pre-trial time served, and two (2) days are in reference to good time earned. As of this date, you have 307 days of incarceration remaining.

Your parole eligibility date is October 21, 2004.

I hereby certify that the foregoing information is true and correct as of June 14, 2004.

William M. Fitzgerald
General Counsel
Hampden County Correctional Center
627 Randall Road
Ludlow, MA 01056-1079

DATE: 11/20/2002

TO: MICHAEL PATRICK HALLE
    9663 SE 162ND PLACE

    SUMMERFIELD FL 34491-

NOTICE TO APPEAR

Re:  State of Florida -vs- MICHAEL PATRICK HALLE
     Case No. 02001144CFMA
     Charge(s) RACKETEERING
             CONSPIRACY TO COMMIT RACKETEERING
             ORGANIZED FRAUD LESS THAN 20000
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT
             UTTERING A FORGED INSTRUMENT

You are hereby notified that the above styled case has been
scheduled for: PRE TRIAL & MOTN HRG

This is your NOTICE TO APPEAR ON 12/09/2002 at 08:30 am

before the Honorable R TOMBRINK in Courtroom B

of the HERNANDO COUNTY COURTHOUSE. BROOKSVILLE FL 34601

If this office can be of further assistance please advise.

HONORABLE KAREN NICOLAI
Clerk of Circuit and County Court

Deputy Clerk

IN ACCORDANCE WITH THE AMERICAN'S WITH DISABILITIES ACT,

name & D.C #: Michael P. Halle
518518

Certificate of Service
Defendant certifies that a copy hereof
has been furnished to the State Attorney
Thomas D. Smith, State Wide Prosecutor
4211 North Lois Avenue Tampa Fla. 33614
by United States mail First class postage

Respectfully Submitted,
this 14th day of July, 2004








**SHERIFF** - Marion County
**CERTIFICATE OF JAIL TIME**

# CERTIFICATION OF JAIL TIME

This is to certify that  MICHAEL P. HALLE _____    served time

in the Marion County Jail from   AUGUST 23, 2004 _____    until

PRESENT (CURRENTLY UNSENT.) _____  @  _____

Signed   *Cpl. Sarah* _____

Date     **111204** _____

Sarah H. Rath
Commission # DD266143
Expires February 15, 2008
Bonded Troy Fain - Insurance, Inc. 800-385-7018

S.O. CASE #   **S02-3521,22,26,96,35492,**
                      **S03-7867**

Held placed for Hernando
County on Aug 24, 2004,
Hold for Massachusetts
effective until 4/17/05.

IN THE CIRCUIT COURT OF THE FIFTH CIRCUIT JUDICIAL CIRCUIT
IN AND FOR HERNANDO COUNTY, FLORIDA

STATE OF FLORIDA,                          CASE NO.:   02-1144 CF

    Plaintiff,                           OSWP NO.:  2002-0161-TPA

v.

MICHAEL PATRICK HALLE,

    Defendant.
_____/

## MOTION FOR STATUS CHECK

The State of Florida, through the undersigned Assistant Statewide Prosecutor and pursuant to Fla.R.Cr.P. 3.190(a), respectfully requests that this Honorable Court order a Status Check in the above-styled cause for the following reasons:

1.    Defendant failed to appear for his trial date of April 28, 2003. Defendant is now in custody in the Marion County Jail.

2.    The State would request to get this case back before a court in Hernando County.

WHEREFORE, the State respectfully requests that this Honorable Court order a Status Check of this case for October 21, 2004 at 9:00 a.m. in front of the Honorable Jack Springstead, Circuit Court Judge.

## CERTIFICATION

I, the undersigned Assistant Statewide Prosecutor, certify that this Motion for Status Check is made in good faith and not for the purposes of delay.

Respectfully submitted this ___//___ day of October, 2004.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof has been furnished to Michael Patrick Halle, pro-se defendant, c/o Marion County Jail, 700 N.W. 30th Avenue, Ocala, Florida 34475, by First Class U.S. Mail this ___//___ day of October, 2004.

PETER H. WILLIAMS
STATE OF FLORIDA
OFFICE OF STATEWIDE PROSECUTION


THOMAS DALE SMITH
Assistant Statewide Prosecutor
Florida Bar No: 0050733
3507 Frontage Road, Suite 200
Concourse Center 4
Tampa, Florida 33607
813-287-7960
(Fax) 813-281-5520

IN THE CIRCUIT COURT OF THE FIFTH CIRCUIT JUDICIAL CIRCUIT
IN AND FOR HERNANDO COUNTY, FLORIDA

STATE OF FLORIDA,                        CASE NO.:   02-1144 CF
    Plaintiff,                           OSWP NO.:   2002-0161-TPA

v.

MICHAEL PATRICK HALLE,
    Defendant.
_____/

### NOTICE OF HEARING

TO:   Michael Patrick Halle
       Marion County Jail
       700 N.W. 30th Avenue
       Ocala, Florida 34475

PLEASE TAKE NOTICE that the State has set the following hearing before the Honorable Jack

Springstead at the Hernando County Courthouse, 20 North Main Street, Brooksville, Florida 34601.

DATE: <u>October 21, 2004</u>    TIME: <u>9:00 a.m.</u>, or as soon thereafter as counsel may be heard:

       Status Check

PLEASE TAKE NOTICE and govern yourself accordingly.

    Respectfully submitted this ___11___ day of October, 2004.

               PETER H. WILLIAMS
               STATE OF FLORIDA
               OFFICE OF STATEWIDE PROSECUTION

               THOMAS DALE SMITH
               Assistant Statewide Prosecutor
               Florida Bar No: 0050733
               3507 Frontage Road, Suite 200
               Concourse Center 4
               Tampa, Florida 33607
               813-287-7960
               (Fax) 813-281-5520

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof has been furnished to Michael

Patrick Halle, pro-se defendant, c/o Marion County Jail, 700 N.W. 30th Avenue, Ocala, Florida

34475, by First Class U.S. Mail this ___11___ day of October, 2004.

**THOMAS DALE SMITH**
Assistant Statewide Prosecutor

F:\USERS\SWP\Thomas Smith\Halle\NotHrg102104.wpd

## HAMPDEN COUNTY SHERIFF'S DEPARTMENT
## AND CORRECTIONAL CENTER

### INMATE REQUEST

To: _A.D.S. Weldon_

From: _Michael P. Halle_    Person # _105758_

**Inmate Name**

Date _3/9/05_    POD _C-5_    Cell _21_

Request _I need a print out, of my
time here, 10/9/03, a hold put
into the Computer 2/2/04 (021144CF/
Hernando County Fla.) Transported to Fla.
8/19/04 and returned 12/8/04._

Inmates Signature: _Michael P. Halle_

Received by: _#278_

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STAFF RESPONSE:

Approved ☐    Denied ☐    (state reason)

_We do not give copies of our
records that WAY. You can have
your CASEWORKER write but - OR - if
they don't know the specifics your CASEWORKER
can get together with our time computation_

Employee Name/Title _A/S Weldon_    Date _3/10/05_

WHITE - Unit File          YELLOW - Inmate          PINK - Kept by Inmate

HCHOC-021 (3 part) (8-1-92) (7-95) (157)

_officer who will help them write it out.
No official printouts are given    over —_



**Barry D. Conway,** LADC II
Substance Abuse Unit

627 Randall Road
Ludlow, MA 01056-1079

413-547-8000 ext. 2759

Michael,

This is best I can
do. You are aware
that case # 041144 CF
was placed in completer
on 8/2/04. 8/19/04 - 12/8/04 you were
in 9/A.

Hope all your troubles
are worked out.

Good Luck.

Barry Conway

P.S. Enclosed is my card
should you need to
call me.

'ALLE, MICHAEL P
02-1144-CF

1- RACKETEERING
2- CONSPIRACY/RACKETEERING
3-ORG FRAUD <$50,000
PET/WRIT HAB CORP 4-24 - UTTERING FORGED INSTR.

**PROSECUTOR** SMITH, THOMAS D
**ATTORNEY** PRO SE
**DEFENDANT:**

☐ PRESENT  ☐ LATE  ☒ NOT PRESENT  ☐ FTA  ☐ WAIVED
☐ CAPIAS/RE-COMMITMENT  ☐ BOND SET AT/REDUCED TO ____
☐ REMANDED INTO CUSTODY
☐ CONTINUED AT REQUEST OF ☐ DEFENDANT ☐ STATE ☐ COURT TO:
_____ @ ____ AM/PM FOR _____

☐ WITH SUBPOENAS  ☐ W/O SUBPOENAS  ☐ CLERK-NOTIFY
☐ WAIVED READING  ☐ SPEEDY TRIAL WAIVED  ☐ TOLLED
☐ INDIGENT/PD APTD  ☐ SAPD APTD  ☐ NOT QUAL. PD
☐ HIRE PRIVATE ATTN.  ☐ WAIVED COUNSEL
☐ INTERVIEW-PTI  ☐ STRICKEN-PTI  ☐ PTI SUPERVISION ____ MOS

**PLEA:**
☐ PREVIOUS PLEA WITHDRAWN  ☐ NOT GUILTY/DENY
☐ GUILTY/ADMIT  ☐ NOLO CONTENDERE
☐ LESSER/AMENDED _____
_____
_____
☐ PSI/PDR ORDERED/WAIVED  ☐ WAIVE VOP/VOCC HEARING

**SENTENCE:**
☐ DOC _____
☐ CONC _____ ☐ CONSEC _____
☐ HCJ _____ ☐ SPEC COND PROBATION
☐ CONC _____ ☐ CONSEC _____
☐ WEEKEND JAIL BEGINNING _____
☐ CREDIT TIME _____ ☐ NO CONTACT CO-DEFENDANT(S)
☐ NO CONTACT  ☐ NO VIOLENT CONTACT VICTIM-FAMILY-PROPERTY
☐ RESTITUTION $ _____ ☐ TBD ☐ PER PROB ☐ RESERVE ☐ J&S
☐ TERM-ALL CONDITIONS MET _____ ☐ NO EARLY TERM
☐ TERMINATE PROBATION  ☐ RELEASE TODAY THIS CASE

**BOND:**
☐ BOND FORFEITED-FTA  ☐ FORFEITURE SET ASIDE
☐ BOND REINSTATED
☐ RECALL CAPIAS/RCO  ☐ SET ASIDE CAPIAS/RCO
☐ CALL S.O.  ☐ RELEASE BOND
☐ CONVERT CASH BOND TO FINE/COSTS - REFUND BALANCE

**VERDICT/ADJUDICATION/DISPOSITION:**
☐ GUILTY  ☐ NOT GUILTY  ☐ WITHHELD
☐ LESSER/AMENDED  ☐ ACQUITTED
☐ JURY TRIAL VERDICT  DATE: _____
☐ MERGE/DISMISS CT _____ WITH _____
☐ DISMISS _____ ☐ NOLLE PROSEQUI _____
☐ NO INFORMATION _____ ☐ REMANDED _____

☐ PROB _____ ☐ COMM CONT _____
☐ CONC _____ ☐ CONSEC _____
☐ COMMUNITY WORK HOURS _____ ☐ IN LIEU OF FINE
☐ REVOKE/REINSTATE/MODIFY ☐ MAY TRANSFER TO _____
☐ PREV COND APPLY  ☐ WAIVE COS  ☐ PRIOR  ☐ FUTURE
☐ TESTIFY TRUTHFULLY  ☐ MENTAL HEALTH  ☐ SUB. ABUSE
☐ DRUG SCREEN  ☐ NO ALCOHOL/BARS  ☐ ANGER MGMNT
☐ RESIDENTIAL DRUG TREATMENT _____
☐ DVP ☐ GED ☐ LETTER ☐ BIP ☐ DNA TEST ☐ LIFE SKILLS
☐ ADDNL. SPECIAL COND _____

**MOTIONS:**
☐ GRANTED  ☒ DENIED  ☐ REDUCE TO JUDGMENT

Pet. for Habeas Corpus
no fees
in Custody D-O-State

**MONETARY OBLIGATIONS:**

| | | |
|---|---|---|
| ☐ FINE | $ _____ | ☐ MAND. COSTS $ _____ |
| ☐ 5% | $ _____ | ☐ PD APP FEE $ 40.00 |
| ☐ ASLT/BAT | $ 201.00 | ☐ PD FEES/COSTS $ _____ |
| ☐ RAPE CRISIS | $ 151.00 | ☐ C.A.M. $ 101.00 |
| ☐ OTHER: | | |

**YOU MUST APPEAR IN THE CIRCUIT COURT, IN HERNANDO COUNTY, BROOKSVILLE, FLORIDA, ON THE COURT DATE LISTED ABOVE.**
**FAILURE TO COMPLY MAY RESULT IN A CAPIAS/WARRANT/RCO BEING ISSUED FOR YOUR ARREST.**

DONE AND ORDERED IN OPEN COURT/CHAMBERS
THIS 17 DAY OF MARCH 200 5

DEFENDANT/ATTORNEY FOR DEFENDANT
KAREN NICOLAI, CLERK OF CIRCUIT COURT

BY: _____ , D.C.          _____ CIRCUIT JUDGE

FORM 301  WHITE-CLERK  GREEN-SAO  CANARY-PUBLIC DEFENDER  PINK-PROBATION  GOLDENROD-DEFENDANT/JAIL  ☐ BONDSMAN  ☒ JAIL

1        IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
             OF FLORIDA, AND FOR MARION COUNTY

2            CASE NO.: 02-2163, 02-4410, 01-2641

3                      01-2366, 01-1948, 01-1780

4    STATE OF FLORIDA

5    vs.                        CERTIFIED

6    MICHAEL HALLE,
                                COPY
7           Defendant.

8    _____/

9    PROCEEDINGS:          Special Status Hearing

10   BEFORE:               Honorable Victor J. Musleh
                           Circuit Judge
11                         Fifth Judicial Circuit
                           In and For Marion County, Florida
12
     REPORTED BY:          Noelani J. Fehr
13                         Stenographic Court Reporter
                           Notary Public
14                         State of Florida at Large

15   DATE AND TIME:        October 5, 2004, 9:59-10:17 a.m.

16   PLACE:                Judge's Chambers
                           Marion County Judicial Center
17                         Ocala, Florida

18   APPEARANCES:          MICHELLE JANSON, A.S.A., and
                           AMY BERNDT, A.S.A.
19                         State Attorney's Office
                           19 N.W. Pine Avenue
20                         Ocala, Florida 34470
                           Attorney for State
21
                           LEANNE BARNES, A.P.D.
22                         Office of the Public Defender
                           204 N.W. 3rd Avenue
23                         Ocala, Florida 34475
                           Attorney for Defendant
24

25

2

1

APPEARANCES:                    THOMAS DALE SMITH, A.S.P.

2                               Assistant Statewide Prosecutor
                                Office of Statewide Prosecution
3                               Concourse Center 4
                                3507 Frontage Road, Suite 350
4                               Tampa, Florida 33607-7013
                                Attorney for State
5
                                CHARLES PAUL HORN, Esq.
6                               4121 East Silver Springs Blvd.
                                Ocala, Florida 34470
7                               Attorney for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1             (Thereupon, the following proceedings were had:)

2          THE COURT:  What case is this?  Is this case

3   Michael Halle; is that it?

4          MS. JANSON:  Yes, your Honor.

5          THE COURT:  Okay.  All right.  All right.  What

6   are we doing on --

7          THE CLERK:  Your Honor, the P.D. says they

8   represent this defendant.

9          THE COURT:  The P.D. represents him, Michael

10   Halle?

11          MR. HORN:  The P.D. does on some, and I do on the

12   older cases, so I came in for status.

13          THE COURT:  Well, which ones?  Do you all know

14   which ones you're representing him on, each of you?

15          MR. HORN:  No.

16          MS. BARNES:  I just -- I believe he just picked

17   up two new cases.  I have all of them here.  And my

18   secretary gave them to me --

19          THE COURT:  Okay.  I am going to call them all

20   out, and you all can tell me who --

21          MS. BARNES:  Well, he needs to tell me which

22   cases that he filed a notice on and then I'll --

23          MR. HORN:  Well, I mean, mine were old cases.

24          MS. BARNES:  Is that -- is that the VOPs?

25          MR. HORN:  It would have been, yeah, I believe.

4

1       THE COURT:  All right.  Well, let's go through

2   it.  State vs. Michael Halle, 02-4410, 2163, and

3   01-2641, 2366, 1948, and 1780.

4       Now, I understand that Mr. Horn represents the

5   defendant on some cases and the Public Defender on

6   others.  And which ones are which?

7       MR. HORN:  Well, I wouldn't have had any of the

8   cases that I believe arose --

9       THE COURT:  You don't have any of the '01s, is

10  that what you're saying?

11      MR. HORN:  Well, I have the old ones.

12      THE COURT:  You've got the '01s, the four '01s?

13      MR. HORN:  I believe so.  I entered a notice of

14  appearance in those cases.

15      MS. JANSON:  Okay.

16      MR. HORN:  I was just contacted by your office to

17  come in here today.

18      MS. JANSON:  I'm showing Mr. Horn on the 02-4410,

19  02-2163.  But also Mr. Smith is here on 02-1144, which

20  is a Hernando County case.

21      THE COURT:  1144.

22      MR. HORN:  Why are we here --

23      THE COURT:  What is that?

24      THE COURT REPORTER:  I'm sorry, I can't hear you,

25  sir.

5

1        MR. HORN:  Why are we here on a Hernando case?

2        MS. JANSON:  Because he was brought back from New

3    York and they have -- they have a hold on him, also,

4    for the Hernando County case.  And we're trying to get

5    them --

6        THE COURT:  Okay.  So what are we doing this

7    morning?

8        MS. JANSON:  -- resolved at one time.  This --

9    this was set up as kind of as a status.  He -- he was

10    brought back from I believe it was New York.

11        MR. SMITH:  Massachusetts.

12        MR. HORN:  Massachusetts.

13        MS. JANSON:  Massachusetts.  I'm sorry.

14        THE COURT:  Okay.

15        MS. JANSON:  And the Statewide Prosecution has

16    the case out of Hernando County.

17        THE COURT:  Okay.

18        MS. JANSON:  Our cases we were going to try to

19    resolve maybe concurrent to theirs --

20        THE COURT:  Okay.

21        MS. JANSON:  -- to get rid of it.  So this is

22    more of a status because we -- we've had him since --

23    well, it was one hundred and eighty days during June

24    22nd of '04.  So we need to have something -- we need

25    to start working on it and do something with it.

6

1           I contacted Mr. Horn for a while.  The defendant

2    couldn't be transported to the jail.  But this is more

3    of a status to figure out what is going on with the

4    cases.  Obviously, I only have two of the cases, and

5    so I don't have the '01 cases.

6          THE COURT:  Well, who's got the others?

7          MS. JANSON:  I'm assuming if their VOPs they just

8    haven't been transferred to me at this point.

9          THE COURT:  Well, we need to go ahead and set

10    them for trial, then, if he -- either plea or set them

11    for trial, one or the other.

12          MR. HORN:  That's --

13          THE COURT:  He's got four Violation Of Probation

14    cases.

15          MS. JANSON:  Okay.  So those are the ones I need

16    to get.  And then the 02-2163 and 02-440 -- 4410 --

17          THE COURT:  He's facing on the Violation Of

18    Probation, let me see how many years.  Probably the

19    max.  Fifteen, twenty-five, then thirty-five --

20          MS. JANSON:  Well, Judge, and I don't --

21          THE COURT:  -- and then thirty-five, and

22    forty-five years in the violations up -- the maximum

23    of forty-five.

24          MR. HORN:  Of course he doesn't score anywhere

25    near that --

7

1   　　　　MS. JANSON:  Judge, I don't know that our cases

2   are going to be that much of a consequence to him.  He

3   seems to be scoring quite a bit with the Statewide

4   Prosecution case.

5   　　　　THE COURT:  Well, forty-five isn't -- isn't --

6   and in the new cases he's got ten, twenty -- twenty on

7   the new cases, max.  And I'm talking about maximum.

8   He's got a maximum of -- of sixty-five years.  And I'm

9   talking about maximums.  I'm talking about that he

10  could be sentenced to that, put it that way, maximum

11  of sixty-five years.  So he's --

12  　　　　MR. HORN:  That's statutory maximum.

13  　　　　THE COURT:  -- if he's got life he needs to

14  understand that.

15  　　　　MR. HORN:  Of course I don't know what he scores

16  on the guidelines sheet.

17  　　　　THE COURT:  Well, I don't know about the

18  guidelines.  But you can go above the guidelines, as

19  you well know.

20  　　　　MR. HORN:  Well, you can.  I don't know of the

21  likelihood if you can or not, I mean, that's coming up

22  again --

23  　　　　THE COURT:  You can -- you can go above

24  guidelines.  You can go up to the maximum --

25  　　　　MR. HORN:  Right.

Owen & Associates (352) 624-2258

8

1      THE COURT:  -- depending on the circumstances.

2  In any event, I don't need to get into all that.  What

3  are we doing with the cases?

4      MS. JANSON:  Well --

5      MR. SMITH:  Your Honor, if I could just speak of

6  mine for a second, the 02-1144-CF.

7      THE COURT:  Okay.

8      MR. SMITH:  Mr. Halle is pro se in that case.

9  That is a racketeering case, conspiracy to commit

10  racketeering, organized fraud, and twenty-four counts

11  of uttering.

12      THE COURT:  That -- that is -- excuse me, that's

13  in the Hernando County case?

14      MR. SMITH:  Yes, sir, it is.

15      THE COURT:  Okay.  All right.

16      MR. SMITH:  We were set for trial.  Mr. Halle was

17  representing himself.  And Mr. Halle FTA-ed for trial.

18      THE COURT:  Okay.

19      MR. SMITH:  The next time we heard from Mr.

20  Halle was when we were contacted by the folks in

21  Massachusetts saying he's in custody.

22      THE COURT:  Okay.

23      MR. SMITH:  The Assistant State Attorney and I

24  are really here just to kind of get Mr. Halle in one

25  pile somewhere.  If I had my druthers, I would say

9

1    let's do the VOPs first and see where he scores.

2       He scores, the bottom of the guidelines, without

3    the FTA and without these new charges in my case,

4    seven years.

5       THE COURT:  Okay.  So what are we going to do?

6       MR. HORN:  Well, I mean, it seems to me you

7    should consolidate the VOPs with the substantive

8    charges that are against him.

9       And then we can go to trial on the FTAs because,

10   I mean, you know, the State has to prove that he

11   failed to appear, which I don't know if they can.

12      MR. SMITH:  Your Honor, I have no intention of

13   taking him to trial on the FTAs.

14      THE COURT:  Okay.

15      MR. SMITH:  On my FTAs.

16      THE COURT:  Right.

17      MR. SMITH:  He has serious VOPs.  The FTA going

18   to trial --

19      MR. HORN:  Well, what's the basis of the

20   violation?

21      MS. JANSON:  And, I mean, at this point I don't

22   have a copy of the violations in front of me.  But if

23   there's something other than these new cases that have

24   violated him, which I'm assuming there probably is,

25   then the VOPs probably would take care of these cases,

10

1   because he doesn't score mandatory jail time on our

2   two cases.

3           THE COURT:  Right.

4           MS. JANSON:  But that's not of any --

5           THE COURT:  Let me just -- let me just put it

6   this way.  What's the minimum guidelines on these six

7   cases?  What does he score?  Do we know?

8           MS. JANSON:  I don't know because I don't have

9   the VOPs.  The VOP score sheet would make the

10  difference.  He's --

11          THE COURT:  Yeah.

12          MS. JANSON:  -- on the two new ones --

13          THE COURT:  Well, what does he score on the two

14  new cases without the Violation Of Probations?

15          MS. JANSON:  He's scoring thirty-six points -- or

16  thirty-nine points, which is no mandatory --

17          THE COURT:  That's right.

18          MS. JANSON:  -- or no minimum jail time.

19          THE COURT:  Okay.  What does he score on the

20  Violation Of Probation cases?  First of all, is he

21  cooperating on whatever it is you all --

22          MR. SMITH:  No, sir.

23          THE COURT:  He's not?

24          MR. SMITH:  Not on ours.

25          THE COURT:  Okay.  What -- what does he score

11

1    then on the Violation Of Probations?

2         MS. JANSON:  That I don't have the score sheet

3    on.  This is actually -- Mr. Smith had faxed me this

4    score sheet.  Because in a sense -- I mean, for us to

5    take ours to trial, if he got put on probation or

6    something like that, that's not going to make any

7    difference if he's ending up going to prison for a

8    minimum seven years on the --

9         THE COURT:  But he's got --

10        MS. JANSON:  -- Hernando County case.

11        THE COURT:  Yeah, but, see, we're just going

12   around in a circle.  He -- forget about the case in

13   Hernando County right now.

14        MS. JANSON:  Okay.

15        THE COURT:  He's face -- he's got two cases, new

16   cases, in which he doesn't score prison on,

17   mandatorily score prison on, but he's got four

18   Violation Of Probation cases.  And I'm sure that's

19   going to put him over the hump.

20        However, he can still go to prison with all -- on

21   these cases up to sixty-five years.  And he needs --

22   and that's what he needs to understand.

23        MR. HORN:  Well, I'm sure he understands that,

24   your Honor, but --

25        THE COURT:  Okay.  As long as he understands.

12

1          MR. HORN:  -- the basis for the violation, I

2     don't know if the Public Defender --

3          THE COURT:  Well, he's got two new cases.

4          MR. HORN:  -- is talking about the other cases.

5          THE COURT:  He's got two new cases.

6          MR. HORN:  Are those your new cases?

7          THE COURT:  He's representing him on these two

8     new cases.

9          MS. BARNES:  So you represent him on the VOPs?

10         MR. HORN:  I believe I represent him on every

11    case that I filed an appearance on back in --

12         THE COURT:  Well, what are the -- what is that,

13    Mr. Horn?  What did you file an appearance on?  You

14    don't know what --

15         MR. HORN:  Well, I mean --

16         THE COURT:  -- cases you filed an appearance on?

17         MR. HORN:  -- I was just called in here, your

18    Honor.  I mean, I didn't prepare this hearing.

19         THE COURT:  All you've got to do is look in your

20    file and see what you filed an appearance on, what

21    cases.

22         MR. HORN:  They brought him back from

23    Massachusetts.  He has -- he has a case down in

24    Hernando County.  Apparently they want to expedite it,

25    so --

13

1          THE COURT:  Okay.  What you're telling me is you

2      don't know what cases you're representing him on.

3          THE DEFENDANT:  This is all the 2002 cases.

4          MR. HORN:  2002 cases.  Whatever I filed an

5      appearance on.

6          THE COURT:  You're representing him on the two

7      new cases.  Okay.

8          MR. HORN:  And I believe we were in the basis of

9      contesting these VOPs and having the VOP -- I mean,

10     these VOPs didn't arise during -- I mean, when the

11     Hernando County cases came up.  We were in the

12     process --

13         THE COURT:  Well, what does that mean --

14         MR. HORN:  -- of contesting it.

15         THE COURT:  But these two cases here came up.

16         MR. HORN:  Those two -- your Honor, I mean, this

17     is a convoluted record.  First of all, some of these

18     charges -- the -- the Statewide Prosecutor, if I may

19     speak, basically charged him with a racketeering

20     pattern within the five county area within the State

21     of Florida.

22         THE COURT:  Okay.

23         MR. HORN:  So all these charges may even be

24     encompassed in the Hernando County charge, which I

25     believe they are, or may have been.  Because he was

14

1    charged with -- there's a -- basically, he's charged

2    with this and -- and they bring these separate

3    charges.

4         But that's part of the racketeering charges,

5    whether they're going to sustain that. So some of

6    these cases probably need to disappear anyway. All

7    the Marion County cases --

8         THE COURT:  They ain't going to disappear.

9         MR. HORN:  Well, your Honor, they were

10   encompassed within that case.

11        THE COURT:  Well, we don't know -- I don't know

12   that.

13        MR. SMITH:  And I don't either, Judge.

14        THE COURT:  Okay.

15        MR. HORN:  I believe they were.

16        THE COURT:  Well, we don't know then. So what

17   are we going to do? What are we doing here this

18   morning?

19        MS. JANSON:  I mean --

20        THE DEFENDANT:  They were in my discovery --

21        MS. JANSON:  -- I'm fine going forward with --

22   I'm assuming the VOPs are going to have a -- are also

23   going to be a VOP for absconding since he was in

24   Massachusetts. I don't know that since I haven't

25   actually seen a Violation Of Probation.

15

1    If it is something other than these cases, since

2    that's what he's going to score the prison on, I say

3    do the VOPs first.  And by that time we can find out

4    if these are encompassed with it.

5        But I've had several conversation -- just for the

6    record so everybody knows -- I've had several

7    conversations with Mr. Horn about these cases.  He's

8    even called me and asked me if we would consider just

9    getting rid of these cases since the Statewide

10   Prosecution is prosecuting him.

11       THE COURT:  Well, what I suggest you do, I

12   guess -- Mr. Smith, are you all going to go to trial

13   over there soon?

14       MR. SMITH:  Sir, since Mr. Halle FTA-ed we

15   haven't looked at doing a trial since we've now got

16   him back.

17       THE COURT:  Okay.  All right.

18       MR. SMITH:  To be honest, it was a very large

19   case with a lot of witnesses --

20       THE COURT:  Right.

21       MR. SMITH:  -- and once Mr. Halle, you know,

22   FTA-ed it kind of threw our trial plans into chaos.

23       THE COURT:  Is this the same case that we've had

24   other things on?  Is this --

25       MR. SMITH:  No, sir.

16

1    THE COURT:  This is different?  Okay.  I was -- I

2    was sort of confused.

3    MR. SMITH:  Well, I can confirm --

4    MR. HORN:  I'm sorry.  I don't want to

5    interrupt --

6    MR. SMITH:  Can I finish, Mr. Horn?

7    MR. HORN:  Sure.

8    MR. SMITH:  This case Mr. Halle is his own

9    attorney on, pro se.  However, what I would like to do

10   is have the Marion County cases and the VOPs settled

11   first, and then see where we are --

12   THE COURT:  Okay.

13   MR. SMITH:  -- and depending on what the State --

14   THE COURT:  Okay.  Well, let's go ahead and put

15   them on a trial docket then.

16   MR. HORN:  Can we run the -- the problem is I

17   have discovery here.  And it mentions these cases in

18   conjunction with the racketeering cases.

19   THE DEFENDANT:  On the Statewide case.

20   MR. HORN:  So I believe he's been charged with

21   these already.  And that --

22   THE COURT:  Well, if that's true then over there

23   in Hernando County he can argue that later on.  And if

24   he wants to go to trial and he says he's already been

25   tried on that then it would be double jeopardy and

17

1    then you can throw it out.

2          MR. SMITH:  Sure.

3          THE COURT:  That's real simple.

4          MR. SMITH:  Right.

5          MR. HORN:  Well, okay, then we can argue that.

6    But the other thing is, I mean, if we're going to try

7    the -- I believe there's FTAs that result from -- from

8    the Violation Of Probations.  There also FTA charges

9    along with them.

10          And I think if that's the basis for the violation

11    in these cases, we need to go ahead and try the FTAs

12    and consolidate them because we -- we have a trial

13    issue and he's going in front of a jury on the VOPs.

14          THE COURT:  No, you don't go in front of a jury

15    on the VOPs.  You'll go in front of a jury on these

16    two new cases.

17          MR. HORN:  I understand that.  But if -- what I'm

18    saying, your Honor, is if the basis for the violation

19    is the FTAs, I think they should be consolidated and

20    we should try the FTAs.  Because, I mean, you're

21    saying --

22          THE COURT:  I don't know what you're saying.

23          MR. HORN:  I'm saying because if they're

24    violating him because of an FTA --

25          THE COURT:  No, they're violating him I guess

18

1      because of the FTA --

2            MR. HORN:  No -- `

3            THE COURT:  -- and these new cases.

4            MR. HORN:  -- the new cases were around way back

5      when.  And they didn't violate him as a result of the

6      new cases.

7            THE COURT:  Well, in any event, set them on the

8      trial docket in November.

9            MS. JANSON:  November.

10           THE COURT:  We're going to set them on the trial

11     docket in November.  Let's --

12           MR. HORN:  What trial docket, the jury --

13           THE COURT:  The trial --

14           MR. HORN:  -- trial docket?

15           THE COURT:  -- docket, yeah.  I can hear -- I can

16     hear the Violation Of Probation, it's the same

17     evidence that we'll hear in the jury trial.

18           MR. HORN:  That's fine.

19           THE COURT:  That's the way to do it rather than

20     having two different trials with the same testimony.

21           MR. HORN:  That's fine.

22           THE COURT:  Does he understand -- right now who

23     is going to be trying the cases, which one of you?

24           MS. BARNES:  He -- if he's representing him on

25     the new cases --

19

1      THE COURT:  Okay.  He'll be --

2      MS. BARNES:  -- then we only have the VOPs.

3      THE COURT:  -- trying them.  All right.  Okay.

4  And you'd better be there because we're going to be

5  trying them both at the same time.

6      MS. JANSON:  And, Judge, it looks like the

7  violations were him not filing a written monthly

8  report, for him not filing a change of address.

9      THE COURT:  Does it say anything about

10  whereabouts unknown, or anything like that?

11      MS. JANSON:  Uhmm, and having this case transfer

12  -- they attempted to contact him on May the 30th,

13  2002, while attempting a routine home personal

14  contact --

15      THE COURT:  Excuse me, let me see what it says.

16      MS. JANSON:  I believe the suspect's mother is

17  the one who notified them that he was --

18      THE COURT:  He's got condition five.  That's the

19  most serious one he's got, the new charges.

20      MS. JANSON:  New charges.  So I mean, there are

21  conditions that he violated.

22      MR. HORN:  Obviously, I have a thing here showing

23  he reported in 2003.  And then we have a reason -- I

24  mean, obviously, if the State is contending he didn't

25  report, there's -- I mean, we have a fairly

20

1    substantial defense on that.

2         THE COURT:  Okay.  Well, that --

3         MR. HORN:  I don't want to tip the defense at

4    this point.

5         THE COURT:  Okay.  You don't need to do that.

6    But condition five is the most serious one on here.

7         MR. HORN:  Which is?

8         THE COURT:  And condition five is he has new

9    charges.

10        MR. HORN:  I don't believe he does, your Honor.

11        THE COURT:  Well, we'll see.  I mean --

12        MR. HORN:  I believe those are old charges.

13        THE COURT:  -- he's got two new charges.  He

14    definitely has that.

15        MR. HORN:  They were recycled.  If the Court

16    recalls this case, this goes back three years.  He was

17    ROR-ed on those charges, I believe, before filing the

18    VOPs --

19        THE COURT:  Look, he's got two new charges, and

20    we'll go to trial with them, and with the four

21    violations at the same time, and get -- and get all

22    six cases taken care of.

23        MR. HORN:  And the FTAs, as well.

24        THE COURT:  Well, we're not going to have the

25    FTAs in front of the jury.

21

1        MR. HORN:  Why not?  That's a jury trial issue,

2    your Honor.

3        THE COURT:  What?  A Failure To Appear?

4        MR. HORN:  Yes, sir.

5        THE COURT:  No.  You show me some law that says

6    that's a jury trial issue and we'll have a jury decide

7    it.

8        MR. HORN:  I believe it is.  I believe it is.

9        THE COURT:  I've never heard of that before in my

10    life.  However, if that's true, give me some law to

11    that effect.  Set them on the November -- when is the

12    November docket, Ms. Berndt?  When is it?

13        MS. BERNDT:  It's the last week of November, the

14    first week of December.

15        THE COURT:  Okay.  It's the last week of November

16    and the first week of December.

17        MR. HORN:  Does the State have an offer on any of

18    these?  I mean, I've talked -- I don't --

19        MS. JANSON:  I am going to have to pull the VOP

20    file.

21        MR. HORN:  I didn't think I talked to you.  I

22    thought it was --

23        MS. JANSON:  You talked to me several times.

24        MR. HORN:  Okay.  I'm sorry about that.

25        MS. JANSON:  Yeah, we talked several times.

22

1        MR. HORN:  Okay.  I know you called me.

2        THE COURT:  Okay.  If you can't settle them

3  before then, let me know.

4        MS. JANSON:  I mean, do you have number I can

5  reach you at --

6        MR. HORN:  Sure.

7        MS. JANSON:  -- because I've tried a couple of

8  numbers.

9        MR. HORN:  895-2963.  And you reached me at that

10  three times.

11        MS. JANSON:  2963?

12        MR. HORN:  Right.

13        THE COURT:  Okay.  One thing, sir, that you need

14  to know is on your -- do you understand what we're

15  saying?  We're going to go to trial on the two new

16  cases in front of a jury.  They decide that.  The four

17  Violation Of Probations they don't decide.

18     In other words, they can find you guilty on the

19  new cases and I can say I don't think you are.  But

20  it's a different burden.  It's less than reasonable

21  doubt.  Or they can say you're not guilty and I can

22  say I think you are.

23     So you can be found not guilty by the jury and

24  guilty on the violations, or vice versa.  I just want

25  you to know that.  You don't get a jury trial on that.

23

1    And the burden of proof is not beyond a reasonable

2    doubt on a Violation Of Probation.  Okay.

3         MR. HORN:  And the VOPs --

4         THE COURT:  The FTAs are --

5         MR. HORN:  -- they can be tried --

6         THE COURT:  -- are not decided by the jury.  They

7    won't come out.  That would prejudice him, if you

8    bring it up that he didn't show up.  I'm not going to

9    allow the State to do that.

10        MR. HORN:  There are no FTAs, right?

11        THE COURT:  What?

12        MR. HORN:  Then there are no FTAs.

13        THE COURT:  I don't know whether there is or not.

14   Are there any FTAs?  There is?

15        MS. JANSON:  Yes, there are.

16        THE COURT:  Okay.

17        MR. HORN:  Well, what is going to happen to the

18   FTA?

19        THE COURT:  Well, he -- when she -- the State

20   can't bring those up in the trial because that would

21   be unduly prejudice.

22        MR. HORN:  I believe it's under the --

23        THE COURT:  That would be -- that's up to the

24   judge to decide whether or not he failed to appear.

25   Okay.

24

1    MR. HORN:  Okay.

2    THE COURT:  All right.

3    MR. HORN:  Your Honor, if they are, I believe

4    it's a trial --

5    THE COURT:  Well, I don't have any idea.

6    MR. HORN:  He can ask for a jury trial on the

7    FTAs before he has to go back to Massachusetts.  I

8    believe his cases have to be tried within a certain

9    time period.

10    THE COURT:  Not after -- not after he's had a

11    Failure To Appear, do they?

12    MR. HORN:  No, I believe under the -- what is it?

13    The Interstate --

14    MR. SMITH:  They do under Interstate --

15    THE COURT:  Okay.  We'll try it --

16    MR. SMITH:  -- Detainer Time.

17    THE COURT:  We'll try it in November; is that

18    sufficient?

19    MR. HORN:  Try it in November?

20    THE COURT:  Okay.

21    MS. JANSON:  That's going to fall within the time

22    for us --

23    THE COURT:  Okay.

24    MS. JANSON:  -- I don't -- I don't know about you

25    guys.

25

1      THE COURT:  All right.  We'll try it in November.

2   Put him on the November docket.  Okay.  So the two of

3   you all can get together and try to work out

4   something?

5       MR. HORN:  Yeah, we can get together --

6       MS. JANSON:  Yeah.

7       MR. HORN:  -- and try to work something out.

8       THE COURT:  Okay.  All right.

9       (The hearing was concluded at 10:17 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1                    C E R T I F I C A T E

2    STATE OF FLORIDA   )

3    COUNTY OF MARION   )

4            I, Noelani J. Fehr, Stenographic Court

5    Reporter and Notary Public, State of Florida at Large,

6    do hereby certify that I was authorized to and did

7    stenographically report the foregoing proceedings taken

8    in the case of STATE OF FLORIDA vs. MICHAEL HALLE, Case

9    Number 02-2163, 02-4410,  et al and that the foregoing pages

10   numbered 1 through 25, inclusive, constitute a true and

11   correct record of the proceedings to the best of my ability.

12           I FURTHER CERTIFY that I am not a relative or

13       employee or attorney or counsel of any of the parties

14   hereto, nor a relative or employee of such attorney or

15   counsel, nor am I financially interested in the action.

16           WITNESS MY HAND AND SEAL this 30th day of

17   March, 2005, at Ocala, Marion County, Florida

18

19   _____

20   NOELANI J. FEHR

21   Stenographic Court Reporter

22   Notary Public

23   State of Florida at Large

24

25   My Commission expires:  7-24-2006


Owen & Associates (352) 624-2258

# THE COMMONWEALTH OF MASSACHUSETTS

## EXECUTIVE DEPARTMENT

To any Officer authorized to serve warrants in criminal cases within this Commonwealth:

WHEREAS, It has been represented to me by the Governor of the State of Florida

That MICHAEL PATRICK HALLE alias' MICHAEL SCHAENEMAN, MICHAEL SCHNENEMAN, THOMAS MIROLLI, MICHAEL BROWN, CHRISTOPHER.M. SCHAENEMAN, et. al. stands charged with the crime(s) of RACKETEERING, CONSPIRACY TO COMMIT RACKETEERING, ORGANIZED FRAUD AND UTTERING A FORGED INSTRUMENT (20 CTS) which that Governor certifies to be crime(s) under the laws of that State, and that he is a fugitive from the justice of said State and has taken refuge in this Commonwealth, and that Governor having, pursuant to the Constitution and Laws of the United States, demanded of me that I shall cause the said fugitive to be arrested and delivered to Deputy Patricia Sauls or designee, the agent of the Governor of the State requesting the return, who is duly authorized to receive the said person into custody and convey said person back to that State: '

AND WHEREAS, the said representation and demand are accompanied by certain documents whereby the said fugitive is shown to have been duly charged with the said crime, to have been present in the State at the time of the commission of the alleged crime, to be a fugitive from justice, and to have taken refuge in this Commonwealth, all of which documents are duly certified by that Governor to be authentic and duly authenticated:

WHEREFORE, you are required to arrest and secure the said fugitive wherever found within this Commonwealth, and afford such opportunity to sue out a writ of HABEAS CORPUS as is prescribed by the laws of this Commonwealth, and to thereafter deliver this person into the custody of the agent of that requesting State for the purpose of being taken back there pursuant to the said requisition; all of which shall be without charge to this Commonwealth; and also to return this warrant and make return to the Secretary of the Commonwealth of all your proceedings had thereunder and of all facts and circumstances relating thereto:

AND all officers authorized to serve warrants in criminal cases within this Commonwealth are hereby required to afford all needful assistance in the execution hereof.

IN WITNESS WHEREOF, I have hereunto signed my name and caused the GREAT SEAL of the Commonwealth to be affixed, this 15th day of April, 2005

GOVERNOR OF MASSACHUSETTS

SECRETARY OF THE COMMONWEALTH

# THE COMMONWEALTH OF MASSACHUSETTS

## EXECUTIVE DEPARTMENT

As GOVERNOR OF THE COMMONWEALTH OF MASSACHUSETTS, I do hereby certify that I have this 15th day of April, 2005 honored the requisition of the Governor of the State of Florida for the surrender of **MICHAEL PATRICK HALLE alias' MICHAEL SCHAENEMAN, MICHAEL SCHNENEMAN, THOMAS MIROLLI, MICHAEL BROWN, CHRISTOPHER M. SCHAENEMAN, et. al. fugitive** from the justice of said last-named State, and have issued a warrant for the fugitive's delivery to Deputy Patricia Sauls or designee, agent whose authority to receive said fugitive is annexed hereto.

IN WITNESS WHEREOF, I have hereunto signed my name and caused the GREAT SEAL of the Commonwealth to be affixed, at the Capitol, in Boston, this 15th day of April, 2005



_____
**GOVERNOR OF MASSACHUSETTS**

_____
**SECRETARY OF THE COMMONWEALTH**

# APPENDIX 2

# INTERSTATE AGREEMENT ON DETAINERS

### Pub.L. 91–538, §§ 1–9, Dec. 9, 1970, 84 Stat. 1397–1403

Sec.
1. Short title.
2. Enactment into law of Interstate Agreement on Detainers.
3. Definition of term "Governor" for purposes of United States and District of Columbia.
4. Definition of term "appropriate court".
5. Enforcement and cooperation by courts, departments, agencies, officers, and employees of United States and District of Columbia.
6. Regulations, forms, and instructions.
7. Reservation of right to alter, amend, or repeal.
8. Effective date.
9. Special provisions when United States is a receiving State.

## § 1. Short title

This Act may be cited as the "Interstate Agreement on Detainers Act".

(Pub.L. 91–538, § 1, Dec. 9, 1970, 84 Stat. 1397.)

### HISTORICAL AND STATUTORY NOTES

**Codifications**

The Interstate Agreement on Detainers is also set out in sections 24–701 to 24–705 of the District of Columbia Code.

**Complementary Laws:**

Ala.—Code 1975, § 15–9–81.
Alaska—AS 33.35.010 to 33.35.040.
Ariz.—A.R.S. §§ 31–481, 31–482.
Ark.—A.C.A. 16–95–101 to 16–95–107.
Cal.—West's Ann.Cal.Penal Code, §§ 1389 to 1389.8.
Colo.—West's C.R.S.A. §§ 24–60–501 to 24–60–507.
Conn.—C.G.S.A. §§ 54–186 to 54–192.
Del.—11 Del.C. §§ 2540 to 2550.
D.C.—D.C. Code 1981, §§ 24–701 to 24–705.
Fla.—West's F.S.A. §§ 941.45 to 941.50.
Ga.—O.C.G.A. §§ 42–6–20 to 42–6–25.
Hawaii—HRS §§ 834–1 to 834–6.
Idaho—I.C. §§ 19–5001 to 19–5008.
Ill.—S.H.A. 730 ILCS 5/3–8–9.
Ind.—West's A.I.C. 35–33–10–4.
Iowa—I.C.A. §§ 821.1 to 821.8.
Kan.—K.S.A. 22–4401 to 22–4408.
Ky.—KRS 440.450 to 440.500.
Me.—34–A M.R.S.A. §§ 9601 to 9609.
Md.—Code, Correctional Services, §§ 8–401 to 8–417.
Mass.—M.G.L.A. c. 276 App., §§ 1–1 to 1–8.
Mich.—M.C.L.A. §§ 780.601 to 780.608.
Minn.—M.S.A. § 629.294.
Mo.—V.A.M.S. §§ 217.490 to 217.520.
Mont.—MCA 46–31–101 to 46–31–204.
Neb.—R.R.S.1943, §§ 29–759 to 29–765.
Nev.—N.R.S. 178.620 to 178.640.
N.H.—RSA 606–A:1 to 606–A:6.
N.J.—N.J.S.A. 2A:159A–1 to 2A:159A–15.
N.M.—NMSA 1978, § 31–5–12.
N.Y.—McKinney's CPL § 580.20.
N.C.—G.S. §§ 15A–761 to 15A–767.
N.D.—NDCC 29–34–01 to 29–34–08.
Ohio—R.C. §§ 2963.30 to 2963.35.
Okl.—22 Okl.St.Ann. §§ 1345 to 1349.
Ore.—ORS 135.775 to 135.793.
Pa.—42 Pa.C.S.A. §§ 9101 to 9108.
R.I.—Gen. Laws 1956, §§ 13–13–1 to 13–13–8.
S.C.—Code 1976, §§ 17–11–10 to 17–11–80.
S.D.—SDCL 23–24A–1 to 23–24A–34.
Tenn.—T.C.A. §§ 40–31–101 to 40–31–108.
Tex.—Vernon's Ann.Texas C.C.P. art. 51.14.
U.S.—18 U.S.C.A.App.
Utah—U.C.A.1953, 77–29–5 to 77–29–11.
Vt.—28 V.S.A. §§ 1501 to 1509, 1531 to 1537.
Va.—Code 1950, §§ 53.1–210 to 53.1–215.
Wash.—West's RCWA 9.100.010 to 9.100.080.
W.Va.—Code, 62–14–1 to 62–14–7.
Wis.—W.S.A. 976.05, 976.06.
Wyo.—Wyo.Stat.Ann. §§ 7–15–101 to 7–15–105.

## § 2. Enactment into law of Interstate Agreement on Detainers

The Interstate Agreement on Detainers is hereby enacted into law and entered into by the United States on its own behalf and on behalf of the District of Columbia with all jurisdictions legally joining in substantially the following form:

"The contracting States solemnly agree that:

"Article I

"The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all

INTERSTATE AGREEMENTS ON DETAINERS

18 App. 2

detainers based on untried indictments, informations, or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

"Article II

"As used in this agreement:

"(a) 'State' shall mean a State of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico.

"(b) 'Sending State' shall mean a State in which a prisoner is incarcerated at the time that he initiates a request for final disposition pursuant to article III hereof or at the time that a request for custody or availability is initiated pursuant to article IV hereof.

"(c) 'Receiving State' shall mean the State in which trial is to be had on an indictment, information, or complaint pursuant to article III or article IV hereof.

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: *Provided*, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

"(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the State to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections, or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the State to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

"(e) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d) hereof, and a waiver of extradition to the receiving State to serve any sentence there imposed upon him, after completion of his term of imprisonment in the sending State. The request for final disposition shall also constitute a consent by the prisoner to the production of his body in any court where his presence may be required in order to effectuate the purposes of this agreement and a further consent voluntarily to be returned to the original place of imprisonment in accordance with the provisions of this agreement. Nothing in this paragraph shall prevent the imposition of a concurrent sentence if otherwise permitted by law.

"(f) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in paragraph (a) hereof shall void the request.

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a

18 App. 2                                    APPENDIX 2

*[handwritten: ARTICLE V Paragraph (C) & (E)]*

term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: *Provided,* That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: *And provided further,* That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

"(b) Upon request of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving State who has lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

"(d) Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending State has not affirmatively consented to or ordered such delivery.

"(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

"Article V

"(a) In response to a request made under article III or article IV hereof, the appropriate authority in a sending State shall offer to deliver temporary custody of such prisoner to the appropriate authority in the State where such indictment, information, or com-

plaint is pending against such person in order that speedy and efficient prosecution may be had. If the request for final disposition is made by the prisoner, the offer of temporary custody shall accompany the written notice provided for in article III of this agreement. In the case of a Federal prisoner, the appropriate authority in the receiving State shall be entitled to temporary custody as provided by this agreement or to the prisoner's presence in Federal custody at the place of trial, whichever custodial arrangement may be approved by the custodian.

"(b) The officer or other representative of a State accepting an offer of temporary custody shall present the following upon demand:

"(1) Proper identification and evidence of his authority to act for the State into whose temporary custody this prisoner is to be given.

"(2) A duly certified copy of the indictment, information, or complaint on the basis of which the detainer has been lodged and on the basis of which the request for temporary custody of the prisoner has been made.

If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

"(d) The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction. Except for his attendance at court and while being transported to or from any place at which his presence may be required, the prisoner shall be held in a suitable jail or other facility regularly used for persons awaiting prosecution.

"(e) At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending State.

"(f) During the continuance of temporary custody or while the prisoner is otherwise being made available for trial as required by this agreement, time being served on the sentence shall continue to run but good time shall be earned by the prisoner only if, and to the extent that, the law and practice of the jurisdiction which imposed the sentence may allow.

"(g) For all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending State and any escape from temporary custody may be dealt with in the same manner as an escape from the original place of imprisonment or in any other manner permitted by law.

"(h) From the time that a party State receives custody of a prisoner pursuant to this agreement until such prisoner is returned to the territory and custody of the sending State, the State in which the one or more untried indictments, informations, or complaints are pending or in which trial is being had shall be responsible for the prisoner and shall also pay all costs of transporting, caring for, keeping, and returning the prisoner. The provisions of this paragraph shall govern unless the States concerned shall have entered into a supplementary agreement providing for a different allocation of costs and responsibilities as between or among themselves. Nothing herein contained shall be construed to alter or affect any internal relationship among the departments, agencies, and officers of and in the government of a party State, or between a party State and its subdivisions, as to the payment of costs, or responsibilities therefor.

"Article VI

"(a) In determining the duration and expiration dates of the time periods provided in articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

"(b) No provision of this agreement, and no remedy made available by this agreement shall apply to any person who is adjudged to be mentally ill.

"Article VII

"Each State party to this agreement shall designate an officer who, acting jointly with like officers of other party States, shall promulgate rules and regulations to carry out more effectively the terms and provisions of this agreement, and who shall provide, within and without the State, information necessary to the effective operation of this agreement.

"Article VIII

"This agreement shall enter into full force and effect as to a party State when such State has enacted the same into law. A State party to this agreement may withdraw herefrom by enacting a statute repealing the same. However, the withdrawal of any State shall not affect the status of any proceedings already initiated by inmates or by State officers at the time such withdrawal takes effect, nor shall it affect their rights in respect thereof.

"Article IX

"This agreement shall be liberally construed so as to effectuate its purposes. The provisions of this agreement shall be severable and if any phrase, clause, sentence, or provision of this agreement is declared to be contrary to the constitution of any party State or of the United States or the applicability thereof to any government, agency, person, or circumstance is held invalid, the validity of the remainder of this agreement and the applicability thereof to any government, agency, person, or circumstance shall not be affected thereby. If this agreement shall be held contrary to the constitution of any State party hereto, the agreement shall remain in full force and effect as to the remaining States and in full force and effect as to the State affected as to all severable matters."
(Pub.L. 91–538, § 2, Dec. 9, 1970, 84 Stat. 1397.)

§ 3.  Definition of term "Governor" for purposes of United States and District of Columbia

The term "Governor" as used in the agreement on detainers shall mean with respect to the United States, the Attorney General, and with respect to the District of Columbia, the Mayor of the District of Columbia.
(Pub.L. 91–538, § 3, Dec. 9, 1970, 84 Stat. 1402.)

HISTORICAL AND STATUTORY NOTES

Transfer of Functions

"Mayor of the District of Columbia" was substituted for "Commissioner of the District of Columbia" pursuant to section 421 of Pub.L. 93–198. The Office of Commissioner of the District of Columbia, as established by Reorg. Plan No. 3 of 1967, was abolished as of noon Jan. 2, 1975, by Pub.L. 93–198, Title VII, § 711, Dec. 24, 1973, 87 Stat. 818, and replaced by the Office of Mayor of the District of Columbia by section 421 of Pub.L. 93–198, classified to section 1–241 of the District of Columbia Code.

§ 4.  Definition of term "appropriate court"

The term "appropriate court" as used in the agreement on detainers shall mean with respect to the United States, the courts of the United States, and with respect to the District of Columbia, the courts of the District of Columbia, in which indictments, informations, or complaints, for which disposition is sought, are pending.
(Pub.L. 91–538, § 4, Dec. 9, 1970, 84 Stat. 1402.)

§ 5.  Enforcement and cooperation by courts, departments, agencies, officers, and employees of United States and District of Columbia

All courts, departments, agencies, officers, and employees of the United States and of the District of Columbia are hereby directed to enforce the agreement on detainers and to cooperate with one another

**18 App. 2**                                    **APPENDIX 2**

and with all party States in enforcing the agreement and effectuating its purpose.

(Pub.L. 91–538, § 5, Dec. 9, 1970, 84 Stat. 1402.)

§ 6.  Regulations, forms, and instructions

For the United States, the Attorney General, and for the District of Columbia, the Mayor of the District of Columbia, shall establish such regulations, prescribe such forms, issue such instructions, and perform such other acts as he deems necessary for carrying out the provisions of this Act.

(Pub.L. 91–538, § 6, Dec. 9, 1970, 84 Stat. 1403.)

HISTORICAL AND STATUTORY NOTES

References in Text

This Act, referred to in text, is Pub.L. 91–538, Dec. 9, 1970, 84 Stat. 1397, known as the "Interstate Agreement on Detainers Act".

Transfer of Functions

"Mayor of the District of Columbia" was substituted for "Commissioner of the District of Columbia" pursuant to section 421 of Pub.L. 93–198. The Office of Commissioner of the District of Columbia, as established by Reorg. Plan No. 3 of 1967, was abolished as of noon Jan. 2, 1975, by Pub.L. 93–198, Title VII, § 711, Dec. 24, 1973, 87 Stat. 818, and replaced by the Office of Mayor of the District of Columbia by section 421 of Pub.L. 93–198, classified to section 1–241 of the District of Columbia Code.

§ 7.  Reservation of right to alter, amend, or repeal

The right to alter, amend, or repeal this Act is expressly reserved.

(Pub.L. 91–538, § 7, Dec. 9, 1970, 84 Stat. 1403.)

HISTORICAL AND STATUTORY NOTES

References in Text

This Act, referred to in text, is Pub.L. 91–538, Dec. 9, 1970, 84 Stat. 1397, known as the "Interstate Agreement on Detainers Act".

§ 8.  Effective date

This Act shall take effect on the ninetieth day after the date of its enactment.

(Pub.L. 91–538, § 8, Dec. 9, 1970, 84 Stat. 1403.)

HISTORICAL AND STATUTORY NOTES

References in Text

This Act, referred to in text, is Pub.L. 91–538, Dec. 9, 1970, 84 Stat. 1397, known as the "Interstate Agreement on Detainers Act".

The date of its enactment, referred to in text, means Dec. 9, 1970.

§ 9.  Special provisions when United States is a receiving State

Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State—

(1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice; and

(2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing.

(Pub.L. 91–538, § 9, as added Pub.L. 100–690, Title VII, § 7059, Nov. 18, 1988, 102 Stat. 4403.)

## Certificate of Service

I, Michael P. Halle, hereby certify that on April 27, 2005, I served a copy of the attatched Motion to Dismiss by mailing a copy, U.S. postage prepaid to the following:

Karen Nicolai
Clerk of Circuit Court
Hernando County Florida.
20 North Main Street
Brooksville, FL. 34601-2800

Thomas D. Smith
Office of Statewide Prosecution
Concourse Center 4
3507 Frontage Road Suite 200
Tampa, Fl. 33607

Clerk of Courts
United States District Court
1550 Main Street
Springfield, Ma. 01103

<u>Certificate of Service</u>

Continued,

Cathryn A. Neaves
Assistant Attorney General
One Ashburton Place
Boston, Ma. 02108

*Michael P Halle*
Michael P. Halle Pro Se
629 Randall Rd.
Ludlow, Ma. 01056