**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| **MICHAEL P. HALLE,** | ) | |
| | ) | |
|     **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-30084-MAP** |
| | ) | |
| **HAMPDEN COUNTY JAIL,** | ) | |
| | ) | |
|     **Respondent.** | ) | |
| | ) | |

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PETITION**

The Respondent, the Hampden County Jail (the "Respondent"), hereby submits this

memorandum of law in support of its Motion to Dismiss Petition (the "Motion").[1]  The Habeas

Corpus Petition (the "Petition") filed by Petitioner Michael P. Halle (the "Petitioner") is

improper, because the Petitioner was not placed in custody pursuant to a state-court judgment, he

has not alleged a fundamental defect resulting in a complete miscarriage of justice, he has failed

to exhaust state remedies, and he names an improper party as respondent. [2]

**BACKGROUND**

**I.**    **The Interstate Agreement on Detainers Generally.**

The Petition is predicated entirely on allegations that the Petitioner was maintained in

custody in violation of the Interstate Agreement on Detainers (the "IAD"), e.g., 18 U.S.C. App.

---

[1] Filed herewith is an Appendix containing documents relevant to the issue of whether the Petitioner previously
exhausted state remedies, pursuant to this Court's Order of April 7, 2005.  The offering of such documents should
not be construed as implying that the Respondent considers the Petitioner to have fully complied with the statutory
exhaustion requirement.  In fact, the Respondent takes a position to the contrary, as discussed herein.

[2] Since the Petition must be dismissed for the grounds stated herein, the Respondent does not address herein the
merits of the Petition.  Should this Court rule that the Petitioner may proceed with his habeas corpus action, the

2, §§ 1 through 9; M.G.L. c. 276, App. §§ 1-1 through 1-8; Fla. Stat. Ann. §§ 941.45 through

941.50.[3]  The IAD is a compact to which nearly all U.S. states and the United States of America

are parties.  Alabama v. Bozeman, 533 U.S. 146, 148 (2001).  It establishes procedures by which

a prisoner in one state may be tried, before the end of his sentence, on outstanding charges in

another state based on which detainers have been lodged against him.  IAD §§ 1-9; Bozeman,

533 U.S. at 148-50.  Its purpose is to protect a prisoner's right to a speedy trial and to minimize

"uncertainties" and interruptions in his incarceration that may impede his treatment and

rehabilitation.  IAD § 2 art. I; Bozeman, 533 U.S. at 148-50.

Such a trial may be secured by the prisoner's service of a "request for final disposition"

of "all untried indictments, informations, or complaints [in another state] on the basis of which

detainers have been lodged against the prisoner."  IAD § 2 art. III(a)-(d); Bozeman, 533 U.S. at

150.  Where he has done so, he must then be brought to trial within 180 days, unless such period

is extended by a court for good cause.  IAD § 2 art. III(a)-(d); Bozeman, 533 U.S. at 150.

Alternatively, a state that has lodged detainers against the prisoner may serve a "request for

temporary custody or availability" upon the state in which the prisoner is being held, in which

case trial must be commenced within 120 days, unless a court extends such period for good

cause.  IAD § 2 art. IV(a)-(c); Bozeman, 533 U.S. at 148-50.

In each of these two situations, if trial is not commenced within the period provided in

the IAD, "the appropriate court of the jurisdiction where the indictment, information, or

complaint has been pending shall enter an order dismissing the same with prejudice, and any

detainer based thereon shall cease to be of any force or effect."  IAD § 2 art. V(c); Bozeman, 533

---

Respondent respectfully requests the opportunity to file an answer and a proposed scheduling order for the parties to brief the merits of the Petition.

U.S. at 150.  In any event, the prisoner must be returned to the original state of incarceration "[a]t

the earliest practicable time consonant with the purposes of [the IAD]."  IAD § 2 art. V(d).

However, "[i]f trial is not had on any indictment, information, or complaint contemplated hereby

prior to the return of the prisoner to the original place of imprisonment, such indictment,

information, or complaint shall not be of any further force or effect, and the court shall enter an

order dismissing the same with prejudice."  IAD § 2 art. III(d); accord IAD § 2 art. IV(e);

Bozeman, 533 U.S. at 148-50.  It is this "anti-shuttling provision" that the Petitioner invokes in

this habeas corpus action.  (Pet. ¶ 12.A.)

     In short, the IAD "basically (1) gives a prisoner the right to demand a trial within 180

days; and (2) gives a State the right to obtain a prisoner for purposes of trial, in which case the

State (a) must try the person within 120 days of his arrival, and (b) must not return the prisoner

to his 'original place of imprisonment' prior to that trial."  Bozeman, 533 U.S. at 151.

     The IAD is "'a congressionally sanctioned interstate compact' within the Compact

Clause of the United States Constitution," New York v. Hill, 528 U.S. 110, 111 (2000), which

clause states that "[n]o State shall, without the Consent of Congress . . . enter into any

Agreement or Compact with another State," U.S. Const. art. I, § 10, cl. 3.  As such, it is

considered "a federal law subject to federal construction," Hill, 528 U.S. at 111, even "for

purposes of habeas corpus," Cross v. Cunningham, 87 F.3d 586, 587-88 (1st Cir. 1996) (citing

Reed v. Farley, 512 U.S. 339 (1994)).

II.     **The Petitioner's History and Allegations.**

     On January 16, 2004, the Petitioner was indicted in the Hampden County, Massachusetts,

Superior Court on the following charges:  two counts of attempting to commit a crime, in

---

[3] Given that the IAD is a uniform act enacted in multiple jurisdictions, it will be cited herein as "IAD," followed by
the appropriate section and article numbers of the uniform act.

violation of M.G.L. c. 274, § 6; five counts of identity fraud, in violation of M.G.L. c. 266, §

37E; two counts of uttering a false check, in violation of M.G.L. c. 267, § 5; one count of

furnishing a false name or social security number upon arrest, in violation of M.G.L. c. 268, §

34A; and one count of forging a check, in violation of M.G.L. c. 267, § 1.  (Super. Ct. Docket.)

He pled not guilty on all charges at his arraignment on January 27 of that year.  (Id.)  On June 2,

2004, one count of identity fraud was nolle prossed, and the Petitioner pled guilty to all other

charges against him.  (Id.)  On that day, he was sentenced to serve concurrent sentences of

eighteen months in the Hampden County House of Correction, nunc pro tunc to January 26,

2004, on nine of the ten counts to which he pled guilty.  (Id.)  On the remaining count to which

he pled guilty, he was sentenced to serve one day in the Hampden County House of Correction,

from and after his eighteen-month sentence.  (Id.)

        The Petitioner alleges the occurrence of the following subsequent events, in relevant part.

On June 14, 2004, pursuant to the IAD, he served a request for final disposition upon authorities

in Hernando County, Florida.  (Pet'r's Statement Facts Supp. Pet. at 1.)  At that time, detainers

had been lodged by both Hernando County and Marion County, Florida.  (Id.)  Florida

authorities responded with a request for more information.  (Id.)  In response to their request for

more information, the Petitioner sent another request for final disposition "to the appropriate

court of Hernando County, Florida," along with supporting documentation, in July of 2004.  (Id.

at 2.)  Accordingly, the Petitioner was transported from the Hampden County Jail and

Correctional Center to Marion County, Florida on August 19, 2004, and "Hernando County

Florida, Notified Marion County Jail of their hold on Michael P. Halle, on August 24, 2004."

(Id. at 2-3.)  On November 15, 2004, the Petitioner pled guilty to all Marion County charges

pending against him.  (Id. at 3.)  Then, on December 7, 2004, he was transported back to the

Hampden County Jail and Correctional Center.  (Id. at 4.)  The following month, he "was made

aware, that [he] was a wanted person in Hernando County, Florida . . . ."  (Id.)  On March 18,

2005, the Petitioner completed his eighteen-month Massachusetts sentence.  (Id. at 5.)

Court records show that, on March 17, 2005, the Petitioner was brought before the

Palmer, Massachusetts, District Court on a charge of being a fugitive from justice on a court

warrant, in violation of M.G.L. c. 276, § 20A.  (Palmer Dist. Ct. Docket.)  He was ordered held

without bail at that time.  (Id.)

On April 7, 2005, the Petitioner filed his Petition in the United States District Court,

attacking the Palmer District Court's decision to hold him as a fugitive from justice.  As grounds

for his attack, he contended that the Hernando County charges pending against him should have

been found to be of no effect under the "anti-shuttling provision" of Section 2, Article III(d) of

the IAD, because he had been transported from Massachusetts to Florida, but then returned to

Massachusetts before being tried on such charges.

Then, on April 15, 2005, Massachusetts Governor Mitt Romney executed a warrant for

the Petitioner's rendition to Florida.  (Governor's Warrant at 1-2.)  Correspondence from the

Petitioner suggests that, on or about May 3, 2005, the Petitioner attempted to file a petition for a

writ of habeas corpus pursuant to Massachusetts law in the Hampden County, Massachusetts,

Superior Court.  (State Habeas Pet.)  It appears that the petition was never accepted for filing.[4]

The case against the Petitioner in the Palmer District Court was dismissed on May 9, 2005.

(Palmer Dist. Ct. Docket.)  On May 12, 2005, the Petitioner was released from the Hampden

---

[4] Specifically, the Office of the Massachusetts Attorney General received an original, handwritten petition, along
with an original envelope addressed to the court clerk and postmarked May 3, 2005.  (State Habeas Pet.)  The court
has no record of any such petition being filed.

County Jail and Correctional Center to the custody of the State of Florida.  (Hampden County

Jail Inquiry.)

**ARGUMENT**

I.      <u>**The Petitioner was not placed in custody pursuant to a state-court judgment.**</u>

The Petitioner cannot maintain this habeas corpus action pursuant to 28 U.S.C. § 2254,

because the confinement at issue did not result from a state-court judgment.  Section 2254

authorizes a federal court to "entertain an application for a writ of habeas corpus in behalf of a

person in custody pursuant to the judgment of a State court . . . ."  28 U.S.C. § 2254.  A

petitioner must, in fact, be in custody under the same state-court judgment attacked in his

petition, in order to obtain relief.  See <u>Maleng v. Cook</u>, 490 U.S. 488, 490-91 (1989) (stating

general rule that habeas corpus statute "require[es] that the habeas petitioner be 'in custody'

under the conviction or sentence under attack at the time his petition is filed" and noting that "in

custody" requirement is jurisdictional); see also <u>Lackawanna County Dist. Attorney v. Coss</u>, 532

U.S. 394, 401 (2001) (indicating that "[t]he first showing a § 2254 petitioner must make is that

he is 'in custody pursuant to the judgment of a State court,'" and concluding that petitioner could

not bring habeas petition directed solely at convictions for which he was no longer serving

sentences).  Here, the Petitioner attacks the decision of the Palmer District Court to hold him

without bail as a fugitive from justice whose extradition was sought by the State of Florida.  (Pet.

¶ 12.A.)  This decision to place him in pretrial detention does not constitute a "judgment of a

State court," and thus, his resulting confinement may not be attacked through a § 2254 petition.

28 U.S.C. § 2254; see <u>Braden v. 30th Judicial Circuit Court</u>, 410 U.S. 484, 489 (1973)

("[F]ederal habeas corpus does not lie, absent 'special circumstances,' to adjudicate the merits of

an affirmative defense to a state criminal charge prior to a judgment of conviction by a state

6

court." (quoting <u>Ex parte Royall</u>, 117 U.S. 241, 253 (1886))); <u>Allen v. Attorney General</u>, 80 F.3d

569, 572 (1st Cir. 1996) (indicating, in affirming dismissal of habeas corpus petition seeking to

block state prosecution, that "[o]rdinarily, a state criminal case is ripe for the ministrations of a

federal habeas court only after completion of the state proceedings (that is, after the defendant

has been tried, convicted, sentenced, and has pursued available direct appeals)," but recognizing

exception where petitioner claims that trial would constitute double jeopardy); <u>Benson v.</u>

<u>Superior Court Dep't of the Trial Court</u>, 663 F.2d 355, 358 (1st Cir. 1981) (indicating that §

2254 "applies only to petitions filed after the state has rendered a judgment" and thus did not

afford a "source of power" applicable to the case at bar, that "while it may be possible [under 28

U.S.C. § 2241] for a court to consider issuing a writ before the trial has taken place and before

the state court has had a chance to decide the constitutional issue, the circumstances under which

this should be allowed must be very carefully examined," and that a double jeopardy challenge

may constitute such an extraordinary circumstance); <u>see also</u> <u>Prince v. Bailey</u>, 464 F.2d 544, 545

(5th Cir. 1972) (concluding that district court lacked jurisdiction to consider habeas petition,

because at the time of its filing, the petitioner was incarcerated awaiting trial and thus "was not

in custody of [state] authorities 'pursuant to the judgment of a State court', 28 U.S.C.A. §

2254(a)"); <u>Jackson v. Coalter</u>, Civil Action No. 99-12346-GAO, 2002 WL 1760879, at *1 (D.

Mass. July 30, 2002) (O'Toole, J.) (determining that "Section 2254 does not apply to the

petitioner's case because, as a pre-trial detainee, he is not being held pursuant to a state court

judgment," but that the petitioner could seek relief under 28 U.S.C. § 2241 following his

exhaustion of state remedies with respect to all claims in his petition), <u>vacated on</u>

<u>reconsideration</u>, 2202 WL 32174211 (D. Mass. Sept. 6, 2002), <u>and reinstated</u>, 337 F.2d 74 (1st

Cir. 2003).  This fact alone warrants dismissal of the Petition.  <u>Allen</u>, 80 F.3d at 572; <u>Prince</u>, 464

F.2d at 545.

**II.    <u>The Petitioner cannot maintain a habeas action based solely on an IAD violation,
        because he has not alleged a fundamental defect resulting in a complete miscarriage
        of justice.</u>**

Even if the Petitioner's allegations are taken as true and it is assumed that the IAD was

violated, this habeas corpus action may not be maintained, because the Petitioner has not alleged

and cannot allege a fundamental defect resulting in a complete miscarriage of justice.  As noted

above, "the IAD is considered federal law for purposes of habeas corpus."  <u>Cross v.</u>

<u>Cunningham</u>, 87 F.3d 586, 587-88 (1st Cir. 1996) (citing <u>Reed v. Farley</u>, 512 U.S. 339 (1994));

<u>see also</u> <u>New York v. Hill</u>, 528 U.S. 110, 111 (2000) ("As 'a congressionally sanctioned

interstate compact' within the Compact Clause of the United States Constitution, Art. I, § 10, cl.

3, the IAD is a federal law subject to federal construction.").  However, a habeas corpus action

predicated on a violation of a nonconstitutional provision of this type will not lie unless "'the

claimed error of law (is) 'a fundamental defect which inherently results in a complete miscarriage

of justice.'"  <u>Fasano v. Hall</u>, 615 F.2d 555, 557-58 (1st Cir. 1980) (quoting <u>Davis v. United</u>

<u>States</u>, 417 U.S. 333, 346 (1974) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 429 (1962)), and

finding habeas corpus claim predicated solely on IAD violations not cognizable under § 2254);

<u>see also</u> <u>Cross</u>, 87 F.3d at 587-88 (declaring, in case involving habeas petitioner who alleged that

officials of one state violated IAD by not returning him to sending state at earliest practicable

time, that "nonconstitutional claims can be raised on habeas only if the alleged error results in 'a

complete miscarriage of justice,'" a "substantial burden" (quoting <u>Reed</u>, 512 U.S. 339)).

Applying this rule, the <u>Fasano</u> and <u>Cross</u> courts rejected habeas corpus actions grounded

in alleged IAD violations similar to those alleged by the Petitioner in the instant case.  The

petition in <u>Fasano</u>, for example, was based in part on an alleged violation of the same anti-shuttling provision invoked here.  615 F.2d at 557-59.  The court found "particularly important" "the fact that the violations of the IAD alleged by the [habeas corpus petitioner] had no bearing on the determination of his guilt or innocence," as "[t]he central purpose of the habeas writ is to provide a collateral means of redressing the wrong inherent in the incarceration of one who is not guilty."  <u>Id.</u> at 558 (noting that Ninth and Second Circuits "in light of <u>Davis</u> have held that IAD violations are generally not cognizable in a habeas proceeding," and citing <u>Hitchcock v. United States</u>, 580 F.2d 964, 966 (9th Cir. 1978), and <u>Edwards v. United States</u>, 564 F.2d 652 (2d Cir. 1977)).  Similarly, the <u>Cross</u> court found that the habeas corpus petitioner there could not meet the "substantial burden" of demonstrating "a complete miscarriage of justice," because "[t]he IAD provision at issue [t]here ha[d] nothing to do with securing a fair trial, and [the habeas petitioner] ma[de] no claim that the alleged IAD violation actually impaired his ability to prepare a defense or to prosecute his appeal."  87 F.3d at 588.

Like the petitioners in <u>Fasano</u> and <u>Cross</u>, the Petitioner here cannot establish that the alleged IAD infraction at issue will result in an impairment of his ability to maintain a defense against the charges pending against him in Florida or will otherwise lead to an unfair trial or an incorrect determination of guilt.  Indeed, he has not even alleged such a risk.

Nothing in <u>Alabama v. Bozeman</u>, 533 U.S. 146, 152-57 (2001), necessitates a conclusion to the contrary.  There the Supreme Court ruled that charges against a criminal defendant in Alabama should have been dismissed under the IAD, where the defendant was transported from a federal prison in Florida to the State of Alabama for his arraignment, but was returned to Florida one day later without being tried.  <u>Id.</u> at 149-57.  The case did not involve a claim for habeas corpus relief, however.  <u>Id.</u>  Thus, while the Court determined that an IAD violation had

in fact occurred, it did not consider whether habeas corpus relief would be appropriate in such

circumstances.  Id.  Fasano, Cross, and the precedents upon which they rely establish that even a

clear violation of a federal statute will not automatically warrant habeas corpus relief, and that a

greater showing of injustice is required.  See generally supra; cf. Fasano, 615 F.2d at 559 n.

("The fact that the policies underlying a law [such as the IAD] are important is not, however,

sufficient to render a claimed violation of that law cognizable in a habeas proceeding.  For

example, the policies of the Fourth Amendment are incontestably important, yet claims based

upon asserted violations of the Fourth Amendment are generally not cognizable in habeas

proceedings.  In either case, the policies, while important, are not related to the guilt or

innocence of the petitioner." (citation omitted)).

Dismissal of the Petition is warranted in light of this defect in the Petitioner's action.  See

Fasano, 615 F.2d at 557-59 (affirming dismissal of petition).

**III.    The Petitioner failed to satisfy the statutory requirement that he exhaust state remedies prior to filing his Petition.**

In addition to the foregoing, the Petitioner is barred from pursuing this action because he

failed to satisfy the statutory requirement that he exhaust state remedies prior to filing his

Petition.  This exhaustion requirement is codified at 28 U.S.C. § 2254, which provides in

relevant part as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State;  or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> . . .

(c) An applicant shall not be deemed to have exhausted the
remedies available in the courts of the State, within the meaning of this
section, if he has the right under the law of the State to raise, by any
available procedure, the question presented.

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), P.L. No. 104-132, Title I, § 104, 110 Stat. 1218 (effective April 24, 1996).

The exhaustion requirement is primarily designed to promote comity in our system of

federalism, as the U.S. Supreme Court has explained:

The exhaustion doctrine is principally designed to protect the state court's
role in the enforcement of federal law and prevent disruption of state
judicial proceedings. . . . Because "it would be unseemly in our dual
system of government for a federal district court to upset a state court
conviction without an opportunity to the state courts to correct a
constitutional violation," federal courts apply the doctrine of comity,
which "teaches that one court should defer action on causes properly
within its jurisdiction until the courts of another sovereignty with
concurrent powers, and already cognizant of the litigation, have had an
opportunity to pass upon the matter."

Rose v. Lundy, 455 U.S. 509, 518 (1982) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950),

overruled in non-relevant part by Fay v. Noia, 372 U.S. 391 (1963)); see also Duckworth v.

Serrano, 454 U.S. 1, 3 (1981) ("The exhaustion requirement . . . serves to minimize friction

between our federal and state systems of justice by allowing the State an initial opportunity to

pass upon and correct alleged violations of prisoners' federal rights."); Nadworny v. Fair, 872

F.2d 1093, 1096 (1st Cir. 1989) (explaining that exhaustion requirement embodies "the federal

sovereign's respect for the state courts' capability to adjudicate federal rights"); Mele v.

Fitchburg Dist. Court, 850 F.2d 817, 819 (1st Cir. 1988) (noting that exhaustion requirement

"ensures that state courts have the first opportunity to correct their own constitutional errors,"

enables federal courts to accord appropriate respect for state sovereignty, and promotes comity

by minimizing friction between federal and state justice systems).  An additional benefit of the

requirement is that "claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review."  Rose, 455 U.S. at 519.

A claim will only be found exhausted if both its factual and legal bases have been presented to state courts.  See Nadworny, 872 F.2d at 1096 (stating that state prisoner must present both factual and legal underpinnings of claim to state courts for exhaustion requirement to be found satisfied); see also Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (noting that "setting forth the factual underpinnings of a claim is insufficient, in and of itself," as the "petitioner must also elucidate the legal foundation of his federal claim").  Moreover, it is not sufficient for a petitioner to raise his claim merely through a motion in state trial court or even an appeal to an intermediate court.   Rather, he must "present, or do his best to present, his federal claim to the state's highest tribunal."  Adelson, 131 F.3d at 263; see also Mele, 850 F.2d at 819-20 (stating that it has long been the rule that power of highest state court must be exhausted before federal court will consider questions posed in habeas petition, and Massachusetts petitioner was thus obliged to try to bring his constitutional objections before SJC in order to preserve them for federal habeas review).  Thus, "a habeas petitioner bears a heavy burden" to show that his claims were "fairly and recognizably presented to the state courts."  Adelson, 131 F.3d at 262.

The Petitioner here has not even come close to meeting this burden.  The Respondent could not uncover any attempt by the Petitioner to present his claims to any appellate courts in Massachusetts prior to filing his Petition (Mass. Appellate Cts. Search Results), and no such attempt is described in the Petition (Pet.).[5]  In light of the Petitioner's complete failure to exhaust

state remedies, dismissal of the Petition at issue is warranted.  See, e.g., Rose, 455 U.S. at 510

(affirming that statutory scheme requires dismissal of petition containing nonexhausted claims);

Duckworth, 454 U.S. at 4 ("Because obvious constitutional errors, no less than obscure

transgressions, are subject to the requirements of § 2254(b), the Court of Appeals was obligated

to dismiss respondent's petition.").

## IV.    The Petition names an improper party as respondent.

In addition to the foregoing, the Petitioner has named an improper party as respondent.

Title 28, Section 2243 of the U.S. Code provides that a writ of habeas corpus or order to show

cause "shall be directed to the person having custody of the person detained."  28 U.S.C. § 2243.

Thus, a habeas corpus action may only be maintained against the petitioner's "immediate

custodian," that is, the "superintendent of the facility in which he is being held" who "has day-to-

day control over the petitioner."  Vasquez v. Reno, 233 F.3d 688, 691 (1st Cir. 2000)

(concluding that Attorney General of the United States was improper respondent in habeas

corpus action by petitioner confined to federal detention center).  Consistent with this authority,

Rule 2 of the Rules Governing Section 2254 Cases (the "Habeas Corpus Rules") provides that,

"[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as

respondent the state officer who has custody," and "[i]f the petitioner is not yet in custody – but

may be subject to future custody – under the state-court judgment being contested, the petition

must name as respondents both the officer who has current custody and the attorney general of

the state where the judgment was entered."  Habeas Corpus Rule 2.  Vasquez makes clear that

such a respondent must be a natural person, 233 F.3d at 693-97 (stating that "the case law

---

[5] Even if the Petitioner attempted to file a state habeas corpus petition in the Hampden County Superior Court on or about May 3, 2005, he still must be found to have failed to exhaust state remedies, because such an attempt would have been made after his federal habeas corpus Petition was filed and, even if successful, would not constitute presentation to the state's highest court.  See 28 U.S.C. § 2254; Adelson, 131 F.3d at 263; Mele, 850 F.2d at 819-20.

establishes that the *warden* of the penitentiary . . . is the person who holds a prisoner in custody

for habeas purposes," that the respondent should be "the *official* having day-to-day control over

the facility," and that "'[t]he *individual* best able to produce the body of the person detained is

that person's immediate custodian'" (emphasis added) (citations omitted)), as does Habeas

Corpus Rule 2 ("[T]he petition must name as respondent the state *officer* who has custody"

(emphasis added)).

This rule is not a mere technicality. Rather, it is tied to the fundamental nature of the writ

itself. "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the

person who holds him in what is alleged to be unlawful custody. . . . The whole force of the writ

is spent upon the respondent.'" Braden, 410 U.S. at 495 (quoting Ex parte Endo, 323 U.S. 283,

306 (1944) (quoting In re Jackson, 15 Mich. 417, 439-40 (1867))); accord Vasquez, 233 F.3d at

690. "The person to whom the writ is directed is 'required to produce at the hearing the body of

the person detained.' The individual best able to produce the body of the person detained is that

person's immediate custodian, his 'jailer' in the parlance of an earlier time. The immediate

custodian rule effectuates section 2243's plain meaning and gives a natural, common sense

construction to the statute." Vasquez, 233 F.3d at 693 (citations omitted) (quoting 28 U.S.C. §

2243).

Here, the Petitioner has failed to name any natural person having custody of him as

respondent. Thus, if a writ of habeas corpus were to issue, the Petitioner's actual custodian

would have had no opportunity to respond to this action in his own name, would have no notice

of the Court's mandate, and would have no compulsion to make the Petitioner available. Indeed,

no individual would be able to act upon the writ by producing the Petitioner. Accordingly, this

action should be dismissed.  See Vasquez, 233 F.3d at 697 (finding dismissal appropriate, if

district court sees fit, in light of failure to name proper respondent).

## **CONCLUSION**

For the foregoing reasons, this Court should allow the Respondent's Motion and dismiss

the Petition in its entirety.

Respectfully submitted,

THOMAS F. REILLY
Attorney General


 /s/ Randall E. Ravitz
Randall E. Ravitz (BBO # 643381)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200, ext. 2852

Dated:  June 6, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on June 6, 2005, by first class mail, postage prepaid, upon:

Michael P. Halle
c/o Hampden County Jail
629 Randall Road
Ludlow, MA  01056

Michael P. Halle
9663 South East 162 Place
Summerfield, FL  34491

Michael P. Halle
c/o Hernando County Sheriff's Office
18900 Cortez Bv.
Brooksville, FL  34601

pro se

　　　　　　　　　　　　　　　 /s/ Randall E. Ravitz
　　　　　　　　　　　　　　　Randall E. Ravitz